Our next case on the call of the docket is Agenda Number 16, Case Number 115-728, The Venture-Newberg Perini Stone & Webster, Appellant v. Illinois Workers' Compensation Comm'n, et al., Ronald Doherty, Appellee. Counsel for the appellant, if you may now please proceed. Thank you. Good morning, and may it please the Court, Counsel. I'm here today on behalf of the appellant, Venture, along with Ted Powers, seated at the Counsel's Table. This is an appeal from the Appellate Court Workers' Compensation Division. The Appellate Court reversed the trial court and reinstated a commission award, finding that the claimant was a traveling employee. We respectfully submit that he was not a traveling employee when he was injured in a traffic accident on his way to his pipe-fitting job at the Cordova Power Plant. If we are correct, the judgment below cannot stand. Generally, an accident that occurs while going to or from work does not arise out of and in the course of employment. This is sometimes known as the coming and going rule. One exception to the rule, the one that the Appellate Court relied on, is for the traveling employee whose work involves travel away from the employer's premises. Our cases recognize that some jobs require an employee to travel as part of the work. But travel was not of the job, per se, that the claimant was hired to perform at Cordova and nowhere else. He was not a traveling employee when the facts show, first, he had no exclusive or continuous work relationship with Venture, but had accepted four temporary jobs beginning two years before the accident. Second, he was hired through union referrals and he was paid under the local contract with no job lasting longer than six weeks. Three, he couldn't even accept temporary work at the Venture when work was available within his home local's territory. And he did not have to accept a job outside his home local. Four, Venture Newberg did not send or assign him to Cordova as a pipe fitting jobs were all filled through union referrals. Five, it was his choice to leave home and seek employment at Cordova after he weighed the pay which was considerable against the cost of travel and lodging. Six, Venture did not pay for the travel or lodging or make his lodging accommodations. Seven, he was not employed until he went through security background checks, drug testing, and processing at Cordova. Eight, he was not on call or instructed to report earlier than scheduled on the day of the accident. And finally, he was hired for only one location and paid only from the time he clocked in until he clocked out. Those are the undisputed facts of record. The briefs discuss the traveling employee cases. There are many of them. The facts differ from case to case. But the common denominator in each case is that the employer sends the employee on the journey, it's at the employer's direction. This is true even in the two cases that the commission relied on. In Wright, a permanent employee was sent by his employer to Tennessee to supervise a field installation. He stayed in a nearby motel. He received a per diem in addition to his regular pay. In Chicago Bridge and Iron, a boiler maker welder was sent by his longtime employer to a job in Minnesota, and the employer paid for the mileage. The facts in this case are not a fit for Wright, Chicago Bridge and Iron, or any other traveling employee case in Illinois. Here, unlike Wright and Chicago Bridge, the claimant is not employed by us and sent away from our premises. He did not have a continuous or exclusive relationship with us. He couldn't even accept a job with us if there was work to be had in his home local 137. He simply chose to temporarily relocate closer to a job opportunity. Notably, in both Wright and Chicago Iron, the employment relationship was formed before the employee sends the, before the employer sends the employee to the remote work site. And the employee was reimbursed in recognition of the fact that the trip was part of the job. So if this may just ask the question, the fact situations here are, as you say, each one is very different. Here we have this situation where the employer had to recruit employees. We have the issue about the union, there weren't any local workers, and so they were required to bring in workers from elsewhere. Should that change our analysis? Well, first of all, that is what the commission was reasoning, to use the word recruit. And I think that's a loaded term, because if you look at the facts, the record shows the opposite. He is not recruited any more or in any greater way than anyone else who is a member of local 25 when he is working as a pipe fitter in the same plant. They're all paid under the same local contract. Mr. Doherty is not making any more money as an inducement to travel from Springfield, okay? If you look at right in Chicago Bridge, there's something extra that's being added to his pay, mileage, per diem, whatever. Here, he's not getting anything. He even lost his seniority by moving temporarily from Springfield to be closer to the job. So if he's being recruited, everybody working there is being recruited, and by that reasoning, everybody's a traveling employee. And I think that was part of, I think that's part of what was obviously a great concern to the dissent in the appellate court, but also, I think, to the commission. Because the commission recognizes in its decision, well, we don't want to say that everyone who temporarily relocates becomes a traveling employee. But we're going to do it in this case, this one case we're going to do it in, and then they go into your recruitment analysis. But if you look at the record, there is nothing extra being paid to him. He's not being recruited, unless you're going to say everybody's recruited, because he's treated the same as everybody else, in or out of that particular local. Don't we have to give deference, though, to the findings of the commission on finding, this is a finding of fact, isn't it? The facts are undisputed. If there was a factual dispute, or if you had one set of facts that were susceptible to different reasonable inferences, there would be deference. The facts are not disputed. Here we have a question of law, which is, is somebody considered a traveling employee, when they temporarily relocate, be closer to a job opportunity? He was not our employee when he left Springfield. He was not our employee when he got to Cordova. He only was hired when he went through the screening successfully, and was hired at the plant. For that one location, and he never had to travel away from that one location. The commission simply did not give any rational or principled limitation on its decision. Nor for that matter did the majority of the appellate court. We submit that to affirm the appellate court and reinstate the commission would radically expand employer liability for accidental injuries while going to or coming from work. It would lead to anomalous and even unintended results. The decision would allow anyone living remotely from the job to receive benefits as a temporary employee when they were injured commuting from or to work while staying at temporary lodgings. Yet deny benefits to an employee who lived permanently near the job. So if someone was a member of local 25, working at the plant as a pipe fitter, commuting from his or her permanent residence, they would fall within the coming and going, presumably. If they don't fall within the presuming, if they don't fall within their rule, then I think opposing counsel, when he has a chance to address you, should tell the court whether someone who's a local resident would be considered a traveling employee in this situation. So Mr. Reeses, are you saying that the off-site location in Cordova, or the main location in Wilmington, there's no legal difference? The Wilmington address is not relevant to this analysis. He wasn't hired there. He wasn't going there before he went to Cordova. It's something in the- In terms of whether or not he would fall within the traveling employee's exception. Is there a difference between the two places, whether it's off-site or that place? I don't believe that it has any relevance. The only employer premises that we're talking about here should be Cordova. Because that is where he was hired, that is where he was to perform his duties, and he never had to travel away from those premises. But let's compare that to some of the traveling employee cases, because I think that's maybe where you're going. In Wright, he's a permanent employee. He's based in Illinois. He has to go to Tennessee for a field installation. When the job ends, he goes back to Illinois for the next job. He is being moved around by his employer from site to site. And you can say, at any one time, that he is traveling away from the premises in that situation. He is going out, he's coming back, he's an employee. Chicago, Ridge and Iron. The employer calls him up in Illinois, says, hey, I got work for you in Minnesota. He's been doing it for 19 years. He has an exclusive relationship with them. Offer of employment is accepted in Illinois. He goes to the Minnesota job site. At the end of the job, he may not have a job. But over 19 years, periodically, he's being moved around each time by his employer, his one and only employer, to work from site to site. And you can say that the work location would be the premises, because he is being moved around from location to location. Here, it's a different situation. He is not our employee until he shows up at Cordova. He never shows up at the Wilmington address. That's just the business address for the Exelon contract. So I do think that the only relevant premises in this case would be the Cordova plant premises. He's hired there, and he never has to travel away from there. Mr. Reese, as to the fact that he had been employed through venture to work at four different power, I'm not sure if it's four different power plant sites, but four different times he had been moved around. Does that not factor into it? That is certainly relevant. I couldn't stand up here and say it's not relevant. Okay, let's talk about that for a second. He has four different stints, never longer than six weeks, over two years. He's working at three locations. One location is Clinton. It's about an hour drive from Springfield. He doesn't go, he's driving straight from Springfield to Clinton and back. Okay, so is he a traveling employee in that situation simply because he's driving directly to the site? When he's hired only for that site and never travels away from that site? We would say no. I think the case law would support that. That's coming and going. Second, bar sales, there's nothing in the record about that. Cordova, second time at Cordova, he was going to be there for two weeks from March 23 to April 6th. He's hired for only that location. In Chicago Bridge, the court emphasizes the fact that he has continuous employment. And you know what? It might be a different case, Mr. Chief Justice. If, like Chicago Bridge, we employed him, and he was employed nowhere else, and he was going, you know, from site to site. The three or four sites that you're talking about. But that's not the case that we have here. Here, the job ends, his employment ends. And he can't even take the next job if there's work for him in Springfield. So it's not analogous, the facts of this case just don't match up with the two main cases that everybody is going to discuss, Chicago Bridge and Wright. We think that the rules should be clear and simple. One becomes a traveling employee at the employer's direction or because of the nature of the job. Consistent with the doctrine's purpose and the case law. And not because someone who is not an employee makes a personal choice to seek temporary work away from home. Apart from the traveling employee doctrine, the commission found that the claimant was entitled to benefits because the course or method of travel was determined by the demands or exigencies of the job. Appellate court never reached that issue, didn't base its decision on this exception to the coming and going rule. But even if it had, the commission could not be affirmed on that basis. For this exception to apply, the employer must exercise control over the course or method of travel. We did not exercise any control over the method or course of travel to the plant. The claimant and his co-worker were using their own transportation. They chose how to go there and where to stay. And they were scheduled to work normal hours and were not on call at the time of the accident. Although the commission did not find that the claimant had to stay within a certain distance of the plant, it found as a, quote, practical map, close quote, that he and co-workers had to stay within a reasonable commute. Respectfully, that's not the test. If it were the test, then Chicago Bridge and Iron is wrong. Because if you remember, when the same exception was argued in Chicago Bridge and Iron, the appellate court rejected that exception. In other words, the mere distance that the employee travels does not dictate the course or method of travel. And it would be unworkable if it became the test, because then it would be up to the employee and not the employer to decide whether a particular commute was too far without temporary relocation closer to the job. The record shows that the claimant was not required to travel outside his home local's territory. He went of his own accord, through a union referral, to pursue a job when none was to be had within his home local. Because we did not send him, and we did not reimburse him for traveling and lodging, he was not a traveling employee. For all the reasons set forth in the petition and the briefs, we ask you to reverse. Thank you. Thank you. May it please the court. Counsel. My name's John Nestler and I represent Ronald Doherty. He's the employee in this matter who was injured while traveling to a power plant located about 200 miles from his home. I would respectfully ask that this court affirm the appellate court, which in turn would affirm the Workers' Compensation Commission's decision that Ronald Doherty's injury arose out of and in the course of his employment. The appellate court's decision does not expand the traveling employee exception. The appellate court's decision was simply that the evidence in this case, the record in this case, supports the arbitrator's, excuse me, the Workers' Compensation Commission's decision that Ronald Doherty's injury arose out of and in the course of his employment. And that's really what the issue is here today, whether the commission's decision is against the manifest weight of the evidence. And if there's any evidence on the record that supports the commission's decision, that decision should be affirmed. The commission's decision determined two important factual determinations. One, that Ronald Doherty is a traveling employee who was acting reasonably and foreseeably at the time of his injury. And number two, that the course and method of Ronald Doherty's travel was determined by the demands and exigencies of his employment. These are two separate exceptions, but they share the same focus. And that focus is on the demands of the employment, not the instructions of the employer. So they don't require the control over the employee's travel? No ma'am, they do not. The cases all unanimously state, when they redress the rule of a traveling employee, that it's the duties that must be looked at, the duties of the employment, the demands of the employment. Not the specific instructions of the employer. And if that were the case, I'd respectfully submit that an employer would creatively get around instructing any of their employees on where to travel or how to travel. And just allow the demands of the employment to force that employee, thereby getting around the traveling employee exception altogether. What's the difference between what Mr. Doherty did and what other people do in going to and coming from work? Well, one very important distinction between Mr. Doherty and those who were employed locally at 25, arises out of one of the foundational reasonings for the traveling employee rule in the first place. And that is that Mr. Doherty was required to travel from a remote location to employment out of town. And out of town employment, as is acknowledged by this court in the Wright case, carries with it an inherent risk that Mr. Doherty, as someone who's from out of town, is unfamiliar with. And that includes the risk of- Who required that? The venture, the employment is what required the travel in this case. So anybody that travels a long distance to work is a traveling employee? No, Your Honor. In this case, the focus of the commission and the focus that is appropriate is that the venture agrees with Exelon that they're going to perform maintenance on their power plant. And they assess how much time is going to be necessary for this maintenance. And they agree, yes, we can perform this job, and the job is this maintenance within a restricted amount of time. They then assess the local manpower and then determine whether or not that's going to be sufficient in order to meet the demands of this job. And if it's not sufficient to meet the demands of the job, then they must ask remote workers. They have to have workers with a certain skill. They have to request them to travel in from a remote location to meet the demands of the employment. Is there any requirement on Mr. Doherty that he accept this job? I know, Your Honor, but I don't believe that it's important whether or not there was a requirement on Mr. Doherty to accept the job or not. Looking at the Chicago Bridge case, the court specifically states that the employee in that case was under no requirement to accept the work, nor was the employer under any requirement to offer the job, but- So a union worker that happened to live within the area, if he had the same accident as Mr. Doherty, he wouldn't be covered? I believe that's- Mr. Doherty would be covered? I believe that you'd have to look at the facts and circumstances specific to that case, but in short answer, that employee that you're discussing doesn't face that foundational reasoning behind the traveling employee exception, and that is that by accepting out-of-town employment, he's exposed to risks inherent to that out-of-town employment that he's unfamiliar with, including the risk of the road. I'm right, it travels to work, there's the risks of the road, don't they? Well, those risks are increased for the traveling employee, which is also recognized in the Wright case that when you're out of town for your employment, there's an inherent risk that you're unfamiliar with the area, you're unfamiliar with the roads in that area. And with that becomes a quantitative increase, to quote what the court says in Wright, that the risk is quantitatively increased for that traveling employee versus the employee who is from the area and familiar with the risks associated with that area. And I think it's important that the Wright case goes on to state that this never goes away, that even if you're there for six, seven months at a time, the increase of risk is still there. And that's one of the many factors that's different for Mr. Doherty that is different from those who are hired through local classified. How do you address Mr. Reese's argument that the Cordova plant is the only place that the claimant was ever required to work in the course of working for this employer? And therefore, he was not away from his home base when he was at Cordova. And that, in and of itself, would distinguish this case from Wright, right? Right, right? I do not believe it distinguishes the case from Wright. It is the issue in Wright that he travels to a location to stay there until the work is complete. There is no indication in Wright that the employer directs him to go there. Instead, Wright specifically states that it's the duties of the employment that take him to that location. And maybe I'm not fully understanding your question, if your honor could restate it. Well, he argued that the Cordova plant is the only place that the claimant was ever required to work. In the course of working for this employer. So therefore, he wasn't away from home when he was at Cordova. Cordova was his home base, I think is the point that Mr. Reese's, I don't want to make his point for him. But I think that was the point he was making. I think it's important to note that it's not the only place that he worked for this particular employer. He also worked at a Clinton plant, a LaSalle plant, and then this plant. The commission makes the factual finding that he was regularly employed by the, to quote their word on page, I believe it's page three of their opinion. That he was regularly employed in 2006 by this employer and would go from plant to plant to perform the maintenance necessary. But I don't think that we should get away from the notion that what's happening here is the venture has a job that needs to be complete. And the demands of that job require them to ask employees to travel in to perform the necessary work. And the demands of the employment, the seven days a week, the ten to twelve hours a day, are the exact demands that the commission references on page eight in both the second paragraph and the final paragraph. When they specifically state that they draw different inferences than what the arbitrator drew from these. And that the inferences that are drawn by the commission, because of these facts, are twofold. One, that the venture, that the onus was on the venture to fill its employment requirements. And that that employment required that people travel from remote locations in order to perform the work necessary. And number two, and I think the most important, if I may quote to the court how they phrase it. They state that respondent was required to recruit from locals around the state and fulfill the manpower requirements. And petitioner, as a practical matter, was required to stay within a reasonable distance from the plant to meet the demands of his job. And I think that that sentence really states exactly why this case falls within the traveling employee exception. Because it's the demands of the job that are requiring Mr. Reese's employment, to quote a phrase from another Supreme Court case, away from his home in order to perform this employment. This isn't a case where- Well, a traveling employee is defined as one who is required to travel away from his employer's premises in order to perform his job. And Mr. Reese, going back to my earlier question, is saying the employer's presence was always Cordova. So he's not being asked to go from point A to point B, from the employer's place of business to another place. He was always hired at that Cordova premises. I think that, if I may answer your Honor's question in two points. First, the premises that he's traveling to is not the employer's premises. There's no facts on the record whatsoever to support that it's the employer's premises. This is a premises owned by Exelon. The employer in this case is but a contractor who is traveling to that premises in order to perform its work. There is a case that I cited in my answer to the petition for leave to appeal that states that whether or not the employer's premises is a question of fact. And I'd also mention that the argument that the employer's premises, in this case, should be a special construction rule is exactly what the right case deals with on point with that. And they reject it. This court rejects the notion that a special construction exception should apply. And then finally, with regard to the premises, I would also note for the court that the first time this has even been brought up is on the petition for leave to appeal. This was not argued before the commission, it was not argued before the trial court, it wasn't argued before the appellate court. Although there was some discussion and oral arguments at the appellate court where counsel for the employer, when asked, should we make a special exception for construction, stated no, that's not what we want to do here. So I think that the premises argument should fail for those reasons. Is it your argument then that any time an employer hires people to do all of its work at a certain location because that's where the job is, those employees are traveling away from the employer's premises to the work site, whether it's construction or something else?  And my point is, is that I don't believe it's dispositive on whether or not they're traveling employees. The traveling employee exception, when viewed in all of this court's precedence, becomes a question of fact. It's been long held in General Steel, Dambold, Irwin, Niesler, Olson Drilling, Northwest Steel, that no formulaic definition for a traveling employee can be laid. The traveling employee inquiry then is whether the facts and circumstances of the case supports that the employment, the duties required of the employee, require the necessity for travel. And I think that if the demands of the employment require him to go away from his home community, as discussed in U.S. Industries and Howell Tractor, then that definition is met. And if the duties necessarily take the employee away from the premises of its employer, as discussed in Irwin and Niesler, then that definition is met. But we can't get away from the fact that this is a factual inquiry, which is appropriately left to the commission. In this case, the commission looked at all of the facts and said, directly in their opinion, we draw different inferences from these facts than what the arbitrator drew. The inferences that we draw are twofold. One, that the venture recruited Mr. Doran. They needed skilled employees to come in to finish this job. The employment required them to do that. And number two, that the demands of the employment, the seven days a week, the ten to twelve hours. The fact that it was strongly suggested that they stay locally. The fact that they had to be near the plant within a half an hour. And then globally, that they still had to be ready, willing, and able to work. In other words, they couldn't drive 200 miles back and forth, perform this work schedule, and meet the ready, willing, and able requirement that the duties of this job dictate. And I think that it's important to take all of these facts into consideration when determining whether or not factually an employee is a traveling employee. So to say that, well, everybody at Local 25 is now a traveling employee. You can't say that, because you have to look at the facts and begin to make the evaluation. And so I believe to say that this somehow creates a blanket exception for anybody who's traveling out of town is just incorrect. I believe that what it's really doing is saying that under these facts and circumstances, under the facts and circumstances present here, he's a traveling employee. And I think this point shines through, even in the fourth district's opinion, where they say that the undisputed facts, as they call them, are that he's traveling away from his employee's premises. But they don't stop there. They don't say that that's it. They say, to a location that's over 200 miles from his home. So even in the appellate court's opinion, like the commission's opinion, they're taking different factors into consideration other than simply whether or not he's traveling away from the employer's premises. Mr. Nesler, you stated that the standard review is a manifest way to the evidence. Mr. Reese's has indicated there's no, the facts are unrefuted. That would seem to end the case, in your opinion. Do we give any, however, the Mr. Reese's argues that it's a question of law, how the law is applied to these facts. Do we give any deference to the commission, if that's what we're going to be doing? Assuming the facts are unrefuted. Well, I think to answer your question, Your Honor, if I understand your question, you're asking me whether I believe it's manifest way or de novo, or you're asking me that under a de novo standard, do you give any? Probably both. You can answer both. Let me start with the first one. I think to answer that question, we have to see how this court has defined a question of law, and this court defines a question of law in the Henry case, and they state that a question of law exists only when there's undisputed facts and those facts are subject to but a single inference. In this case, I believe there are disputed facts. More importantly, what I want to concentrate on, because I think it's a stronger argument, is that the facts are subject to dual inference. You have an arbitrator who drew certain inferences from the facts. One of the most important inferences that he drew when coming down with this case was that Ronald Doherty was not required to stay, that he chose to stay near the plant. And the commission specifically states that it drew a different inference from the facts in this case. They state, the commission disagrees with the arbitrator's conclusion. What were the facts that were disagreed on, not the inference? Well, I think that the dispute of fact is one, whether or not he was required to stay near the plant. I think they largely tie together in a certain sense, that one of the disputes in fact is whether he chose to stay there or whether the requirements of employment necessitated that he stay close by. And that's the fact that I was discussing in the commission's decision, which states that they disagree with the arbitrator's conclusion effect on that issue. They draw the inference that he wasn't required to stay, that he didn't choose to stay there. So the fact that- There is no dispute that there was no requirement by the employer that they stay any place, that you'd have to draw some inferences as to whether it was necessary to stay in order to perform the work that you've just argued. Is that a fair statement? No, I think there was a dispute. I do think the commission ultimately decided that Newberg didn't directly say we want you to stay here. But Ronald Doherty in his testimony always said that it was his understanding he was supposed to stay within a certain distance from the power plant. So I do think that there was that dispute in fact. But I think that the commission in their decision said that there was no express instruction from on high, Ronald Doherty, you need to stay here. So that's why they move on to the inference versus the actual fact, actual factual dispute. But just to suggest to the court that an inference is enough for a case called Illinois Valley Irrigation, another Supreme Court of Illinois case, recognizes this, and they say that when the arbitrator and the commission draw differing inferences from the evidence, the manifest weight of the evidence is the appropriate standard of review. So- Counsel, let me ask you this. I made a note to myself, but I didn't pinpoint site where it came from. I thought I understood that he had to be available on an on-call basis for during that window of time of the 17, was it 17 to 20 days when he was employed there? That's correct, Your Honor. Does that make a difference? Does that factor in? Absolutely, Your Honor. That's certainly one of the factors that the commission considers when determining the ultimate factor they determine with the tribal employees. Was that fact that I noted, is that correct? Or did I misapprehend the record? That is correct, Your Honor. That he, Ronald Doherty testifies that he was to be within a half an hour of the plant in case of emergencies. He doesn't say they told me 30 minutes, but he says that in his experience through his employment with them, a half an hour was sufficient for him to meet the emergency on-call requirement that it was his understanding that the venture had. And that fact is considered by the commission when they make, again, their ultimate determination of fact that it was the demands of the employment that required Mr. Doherty to travel. If Your Honor's have no further questions with respect to that, I'll quickly move on to the reasonableness of Mr. Doherty's actions. The second part of the analysis in a traveling employee exception is whether his actions were reasonable and foreseeable. And I think in this case, especially when looking at Wexler and looking at his pest control, there's no question that driving directly from your motel to your job site qualifies as a reasonable and foreseeable activity. So I won't say a great deal more about that. And unless Your Honor's have any other questions, I would just ask that this court please affirm the Workers' Compensation Commission. And thank you very much for your attention today. Thank you. We've heard something about the standard of review here, but the facts regarding the union referral and the terms surrounding his employment are not disputed. And we think review should be de novo. Unlike Chicago Bridge and Iron, the employer didn't send the claimant or assign him to Cordova. He's not hired until he goes through screening at the plant under the contract. He's only paid from the time he's clocked in until he clocks out. We don't pay travel. We don't pay the motel. He was, to go to your point Justice Kilbride, he was not on call that day. And there was no emergency when the accident happened. Those are the undisputed facts. But even if you believe the review is not de novo, we submit the determination by the commission was unreasonable and an unjustified expansion of the traveling employee cases. You can apply the law just as well as, if not better than, the commission. And we submit the commission misconstrued Chicago Bridge and Iron and right. We really didn't hear anything about the union referral process from council. He said that we requested the claimant to travel. That's not correct. Under the case law, and one of the cases we cite is correct construction in the reply brief. Claimant's employment with us began only when the last act necessary to form the contract for hired took place. That's at the plant. It's after he completes the screening. And this is true even when the hiring is done through union referrals. They're not our hiring agent. We hire him at Cordova and he never travels away from Cordova. The definition of a traveling employee is one whose work requires travel away from the employer's premises. But in this case, Cordova should be viewed as the relevant premises. This travel brought him to and not away from Cordova. That was the only location for which he was hired. We think the case should be submitted and decided under the coming and going rule. Let's be very clear because there's some question, I think it was from Justice Thomas about whether Cordova should be considered the premises. Look, if the employer sends an employee from site to site, the worker's going to be a traveling employee. That's true regardless of whether it's the construction industry or anywhere else. That's right, and that's Chicago Bridge and Iron. Chicago Bridge and Iron's a construction worker, no dispute there. But if someone like the claimant, who is not an employee, goes of his own volition to pursue a job away from home, that person should not be considered a traveling employee. And that is how the commission and the appellate court expanded the doctrine. We didn't send him away from Cordova. He chose to travel there, and that was to pursue a job opportunity. This case presents a question for the court that's going to be very important in the future. Is temporary relocation make someone a traveling employee? And to answer that question, you can't simply hide behind, and I hate to say it's evasions, but that's what it is to talk about, well, it's just the facts of this case. And it's always the facts of the case that push the doctrine in a certain direction, because the doctrine always develops on a case by case basis. That's how case law develops. The commission recognized that not all temporary relocation is going to make someone a traveling employee. That's something counsel didn't tell you about, but that's something that I think you have to acknowledge. But it couldn't draw the line, and the appellate court didn't draw the line. An opposing counsel, other than to refer to facts, hasn't given you any limitations, any principled basis to limit the reach of the appellate decision. But this court, as the highest court in the state of Illinois, has a responsibility to construe the act reasonably. And unless this court is prepared to hold that all temporary relocating makes one a traveling employee, you should reverse. If there are no further questions, we ask you to reverse. Thank you. Thank you. Number 115728, DeVenture, Newberg, Perini, Stone, and Webster. Appellant versus the Illinois Workers' Compensation Commission, et al. Ronald Doherty is taken under advisement, this is agenda number 16. Mr. Reeses, Mr. Nestler, we thank you for your arguments.